El Pueblo de Puerto Rico, peticionario, *v.* Tribunal Superior de Puerto Rico, Sala de Bayamón, Hon. Edwin Meléndez Grillasca, Juez, demandado; Manuel Olmeda Viruet, interventor.

*Número:* O-75-370          *Resuelto:* 7 de noviembre de 1975

*Miriam Naveira de Rodón, Procuradora General, Adolfo J. Vila, Procurador General Auxiliar,* abogados del peticionario; el interventor no compareció.

El Juez Presidente Señor Trías Monge emitió la opinión del Tribunal.

El 26 de julio de 1974 un agente de la policía detuvo a un conductor al advertir que guiaba en modo errático. Por considerar que el conductor se hallaba en aparente estado de embriaguez, el agente le preguntó si quería someterse voluntariamente a la prueba del aliento o de la sangre. El conductor asintió y el propio agente le administró en el cuartel el análisis del aliento, que reveló un porcentaje de 0.17 de alcohol por peso en la sangre. El policía le entregó entonces al conductor copia del resultado del análisis, lo llevó junto a su familia a su casa y lo citó para que compareciera cuatro días después ante un magistrado para la determinación de causa probable.

El 30 de julio de 1974 el conductor compareció ante el magistrado, quien determinó la existencia de causa probable para su arresto por violación de la Sec. 5-801 de la Ley Núm. 141 de 20 de julio de 1960, 9 L.P.R.A. sec. 1041, y le dejó en libertad sin fianza hasta el día del juicio. Antes de celebrarse éste, el conductor solicitó la desestimación de la acusación que se le formuló en su día por el referido delito, el cual es de naturaleza menos grave, alegando principalmente que debió llevársele sin demora innecesaria ante el magistrado instructor para que éste tuviese oportunidad de comprobar su estado. El Tribunal Superior resolvió que "Una vez arrestada la persona por conducir en estado de embriaguez y se le practica un análisis no puede entonces procederse a una citación para someter el caso ante un magistrado días después. Arrestada una persona por el delito que fuere, la ley exige que se lleve sin demora innecesaria ante un magistrado." Se ordenó en consecuencia la supresión del resultado de la prueba de aliento. El Ministerio Público recurre ante nos en petición de *certiorari* para revisar esta determinación.

El caso plantea en esencia la vital cuestión de la disponibilidad o no en Puerto Rico del procedimiento de citación en situaciones de alegada conducción de vehículos de

motor bajo los efectos de bebidas embriagantes, cuando la persona detenida se somete voluntariamente al análisis de su aliento o su sangre. Expuesto el problema de otro modo, ¿se rige el cuadro de hechos aquí descrito por la Regla 22 (a) (¹) o por la 7 (a) (²) de las de Procedimiento Criminal? El empleo de técnicas diversas de interpretación puede provocar conclusiones distintas, por lo que el actual litigio está revestido también de relevancia teórica respecto al propio proceso adjudicativo.

Si nos atenemos al método literal que prescribe el mecanismo de lo que Jhering denominó la jurisprudencia de conceptos ("Begriffsjurisprudenz", en contraposición a la "Interessenjurisprudenz"), no debe alterarse la resolución recurrida. La Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 1043 (b), dispone que "Cualquier agente del orden público deberá requerir de cualquier conductor que se someta a cual-

---

(¹) La Regla 22 (a) de las de Procedimiento Criminal lee así:

*"Comparecencia ante el magistrado.* Un funcionario del orden público que hiciere un arresto autorizado por una orden de arresto deberá llevar a la persona arrestada sin demora innecesaria ante el magistrado disponible más cercano. Cualquier persona que hiciere un arresto sin orden de arresto deberá llevar a la persona arrestada sin demora innecesaria ante el magistrado disponible más cercano, y si la persona que hiciere el arresto sin orden de arresto fuere una persona particular, podrá entregar a la persona arrestada a cualquier funcionario del orden público, quien a su vez deberá llevar a la persona arrestada sin demora innecesaria ante un magistrado, según se dispone en esta regla. Cuando se arrestare a una persona sin que se hubiere expedido orden de arresto y se le llevare ante un magistrado, se presentará inmediatamente una denuncia y se expedirá una orden de arresto o citación, según se dispone en las Reglas 6 y 7."

(²) La Regla 7 (a) de las de Procedimiento Criminal lee así:

*"Citación.* Se podrá expedir una citación en lugar de una orden de arresto si el magistrado ante quien se presentare la denuncia tuviere motivos fundados para creer que la persona va a comparecer al ser citada, o si la persona fuere una corporación. Se podrá expedir más de una citación basada en una sola denuncia. En aquellos casos en que un funcionario del orden público pudiere arrestar sin orden de un magistrado, dicho agente, si se tratare de un delito menos grave (*misdemeanor*), podrá citar por escrito y bajo su firma a la persona para que comparezca ante un magistrado, en vez de arrestarla. La citación informará a la persona que si no compareciere se expedirá una orden de arresto en su contra."

quiera de dichos análisis químicos, después de haberle detenido y *arrestado* . . . ." (Énfasis nuestro.) La Regla 22(a) provee, como hemos visto, que un funcionario del orden público que hiciere un arresto, con o sin orden para ello, deberá llevar a la persona arrestada sin demora innecesaria ante el magistrado disponible más cercano. *Ergo*, aparenta dictar la lógica, la Regla 22(a) gobierna los procedimientos aun en casos de sumisión voluntaria a análisis de sangre o aliento por conducir en alegado estado de embriaguez.

█ Existe, sin embargo, no sólo la lógica de las palabras, a menudo estéril y despistante, sino también la lógica de la realidad, de destilación más trabajosa. Las palabras no habitan un universo propio, desvinculado del mundo que las genera y al que se refieren. Ogden y Richards, *The Meaning of Meaning*, 1923; Wittgenstein, *Philosophical Investigations*, 1953. El lenguaje es tan sólo inteligible en función de ese mundo. El lenguaje jurídico en especial deriva su significado de las realidades que lo forjan y alteran. El mismo vocablo—en el caso presente el término "arresto"—puede variar de sentido en circunstancias diferentes. Aun cuando el idioma en su interpretación literal contradiga el propósito de una disposición estatutaria, lo que debe ceder es el idioma y no la realidad que motiva el estatuto. Importa en consecuencia penetrar la superficie verbal del problema ante nos, precisar el diseño y la razón de ser de las disposiciones legales que aquí nos ocupan, sopesar los intereses en juego, para intentar acercarnos a la interpretación más justiciera.

Veamos en primer lugar el esquema de nuestra Ley de Vehículos y Tránsito sobre el asunto envuelto.[3] El estatuto declara ilegal conducir un vehículo de motor bajo los efectos

---

[3] La constitucionalidad general del estatuto—no planteada aquí—se ha sostenido en *Pueblo* v. *Tribunal Superior*, 84 D.P.R. 392 (1962); *Pueblo* v. *Díaz Torres*, 89 D.P.R. 720 (1963). Véanse también: *Breithaupt* v. *Abram*, 352 U.S. 432 (1957); y *Schmerber* v. *California*, 384 U.S. 757 (1966).

de bebidas embriagantes. 9 L.P.R.A. sec. 1041(a). Establece a la vez presunciones derivables de la cantidad de alcohol existente en la sangre del acusado al tiempo en que se cometió la alegada infracción, según surja tal cantidad del análisis químico de su sangre o aliento. 9 L.P.R.A. sec. 1041(b). Se considera que toda persona que conduzca un vehículo ha prestado su consentimiento a someterse al análisis de su aliento, su sangre o de cualquier otra substancia de su cuerpo a excepción de la orina. 9 L.P.R.A. sec. 1043(a). Cualquier agente del orden público que tenga motivos fundados para creer que un conductor está operando su vehículo bajo los efectos de bebidas embriagantes deberá detenerlo y arrestarlo y requerirle que se someta a cualquiera de los mencionados análisis químicos. 9 L.P.R.A. sec. 1043(b). Copia del análisis químico se le suministra al conductor. 9 L.P.R.A. sec. 1043(f) y (h). La persona detenida puede rehusar someterse a examen químico alguno. 9 L.P.R.A. sec. 1044(a). Es en tal caso que la ley expresamente dispone que "Si el detenido se negare a someterse al análisis químico según fuere el caso, el análisis no le será hecho, y será conducido ante un magistrado, o ante un fiscal, quien deberá tomar a la mayor brevedad posible una declaración jurada" del agente y otras personas concernidas. Si se le lleva ante un fiscal, éste "someterá a un magistrado la evidencia que así hubiere obtenido a fin de que éste determine causa probable de la comisión del delito." En uno u otro caso, "si el magistrado considerare que existe causa probable de la comisión del delito por la persona detenida expedirá la orden de arresto de rigor . . . ." 9 L.P.R.A. sec. 1044(b). Cuando la persona detenida se somete voluntariamente a un análisis químico, la ley guarda silencio sobre si debe llevársele inmediatamente ante un magistrado o proceder a su citación.

El patrón que sigue esta ley es análogo al que priva en la casi totalidad de los estados miembros de la Unión Americana y en varios otros países. Bergman, Jr., *Driving*

*While under the Influence of Alcohol: A Model Implied Consent Statute*, 12 W. & M. L. Rev. 654, nota 1 (1971).; *Breithaupt* v. *Abram*, 352 U.S. 432, 436, nota 2 (1957) ; Ross, *The British Law on Drinking and Driving*, 60 A.B.A.J. 694 (1974) ; Seago, *The Breathalyser Reblown*, 1973, Crim. L. Rev. 153. Es interesante señalar al respecto que las ofensas de tránsito representan en algunas jurisdicciones más de una tercera parte de los casos en que se emplea el procedimiento de citación, en lugar del de arresto. Berger, *Police Field Citations in New Haven*, 1972 Wis. L. Rev. 382, 401. La citación es el procedimiento usualmente utilizado en muchos casos de infracción a las leyes de tránsito. National Advisory Commission on Criminal Justice Standards and Goals, *Courts*, 1973, pág. 71.

La citación como alternativa al arresto se considera de hecho un procedimiento en extremo eficaz en casos de esta naturaleza. Reduce las inconveniencias del ciudadano derivables de su arresto y detención; propende a una mejor utilización de los recursos policiacos; y mejora las relaciones entre la ciudadanía y los agentes del orden público. Berger, *supra*, 394, 411–412. Estudios recientes sobre procedimiento criminal recomiendan aún una generalización mayor de su uso. National Advisory Commission on Criminal Justice Standards and Goals, *supra*, Norma 4.2; *Uniform Rules of Criminal Procedure, Handbook of the National Conference of Commissioners on Uniform State Laws*, 1974, Regla 221(a). El Instituto de Derecho Americano recomienda que se permita el uso máximo de citaciones por agentes del orden público, haya o no mediado arresto. The American Law Institute, *A Model Code of Pre-Arraignment Procedure*, 1975, sec. 120.2. Estos estudios también contienen material útil para la reforma de los procedimientos de citación y arresto, los que adolecen de ciertas imperfecciones. Véase: Bybee, *Nevada's 1967 Criminal Procedure Law From Arrest to Trial: One State's Response to a Widely Recognized Need*, 1969 Utah L. Rev. 520, 523.

Puerto Rico se cuenta entre las comunidades que autorizan en ciertas circunstancias la citación en lugar del arresto por agentes del orden público. Recuérdese que nuestra Regla 7(a) expresa que ". . . En aquellos casos en que un funcionario del orden público pudiese arrestar sin orden de un magistrado, dicho agente, si se tratare de un delito menos grave (*misdemeanor*), podrá citar por escrito y bajo su firma a la persona para que comparezca ante un magistrado, en vez de arrestarla. . . ." Conforme a la Regla 11(a), un funcionario del orden público puede hacer un arresto sin la orden correspondiente "Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. . . ." La Regla 11 se aplica, entre otras situaciones, cuando el agente tiene motivos fundados para pensar, como en el caso presente, que alguien conduce un vehículo de motor en estado de embriaguez. *Pueblo* v. *Díaz Torres*, 89 D.P.R. 720 (1963). Dicho delito es de naturaleza menos grave. 9 L.P.R.A. sec. 1042(a). Se cumplen por tanto en este pleito las circunstancias requeridas para la invocación de la Regla 7(a), a menos que se estime que la referencia antes citada en la Ley de Vehículos y Tránsito al procedimiento de arresto, 9 L.P.R.A. sec. 1043(b), constituye un obstáculo insalvable.

El historial legislativo no revela que el propósito de la Asamblea Legislativa al aprobar dicha disposición de la Ley de Vehículos y Tránsito fue prohibir el uso del procedimiento de citación en casos como el presente, en que su empleo persigue claros y reconocidos propósitos de utilidad social y protección ciudadana. La referencia al arresto en la disposición de la Ley de Vehículos y Tránsito, parece encaminarse más bien a legitimar los procedimientos que dicha legislación establece tanto en el caso de sumisión voluntaria como el de negativa a que se practique la prueba. Dado el hecho de que la ley no exige en el contexto de la sumisión voluntaria, contrario al de la negativa, que se lleve al conductor ante un magistrado,

cabe concluir que en el primer caso el arresto no tiene el efecto de hacer aplicable la Regla 22 (a).

Cabe preguntarse, además, si en la situación de autos ocurrió verdaderamente un arresto o al menos el tipo de arresto que haría aplicable la Regla 22. El acusado aceptó someterse voluntariamente a la prueba del aliento. Su propio abogado argumentó ante el tribunal de instancia que su cliente no fue en realidad arrestado. Resolución de 10 de febrero de 1975 del tribunal de instancia, pág. 3. Efectuado el análisis, se condujo inmediatamente al acusado a su hogar. No ocurrió la privación irrazonable de libertad u otras transgresiones que se asocian normalmente con la Regla 22. 1 Wright, *Federal Practice and Procedure*, sec. 72. No se trata aquí de la detención de una persona para extraerle una confesión inadmisible o violentar de otro modo sus derechos. *McNabb* v. *United States*, 318 U.S. 332 (1943); *Mallory* v. *United States*, 354 U.S. 449 (1957). Se trata tan sólo de la administración voluntaria de una prueba química, seguida de una citación en lugar de un arresto, que evita las inconveniencias de este último procedimiento para el acusado, que en este caso estaba acompañado por su familia.

■ Razones de orden público apoyan la interpretación de que las disposiciones legales aquí envueltas no tienen el efecto de impedir el uso en Puerto Rico del procedimiento de citación, en vez del de arresto, en casos de sumisión voluntaria a análisis químicos por sospecha fundada de conducción en estado de embriaguez. El procedimiento de citación, a pesar ciertamente de que puede mejorarse, posee la sencillez y flexibilidad que se busca en la reforma de los procedimientos judiciales. No vulnera los derechos de los ciudadanos en casos como el presente, en que la persona detenida puede negarse a que se le practique el análisis químico y exigir que se le conduzca ante un magistrado, conforme el trámite dispuesto en 9 L.P.R.A. sec. 1044. Por lo contrario, se le evitan incomodidades adicionales al ciudadano que desee someterse volunta-

riamente a la prueba concernida. El procedimiento de citación facilita a su vez un uso más eficiente de los recursos policiacos del país. Los casos por conducir en estado de embriaguez montaron en 1974–75 a 7,414, número que se aproxima mucho al total de miembros de que se compone nuestra fuerza policiaca, que en 1973 montaba a 7,714 miembros. *Informe al Gobernador sobre la Criminalidad en Puerto Rico*, setiembre de 1973, pág. 40. Lo que es más grave, los casos de embriaguez siguen un ritmo de veloz ascenso. La cifra citada de casos representa un aumento de 433.7% si se le compara con los casos para el año fiscal 1969–70.

Por los fundamentos expuestos *se revocará la resolución recurrida y se devolverá el caso al tribunal de instancia para la continuación de los procedimientos de modo conforme con esta opinión.*

El Juez Asociado, Señor Díaz Cruz, emitió voto concurrente en el cual concurren los Jueces Asociados, Señores Dávila, Martín, Irizarry Yunqué y Negrón García.

—O—

Voto concurrente del Juez Asociado Señor Díaz Cruz en el cual concurren los Jueces Asociados Señores Dávila, Martín, Irizarry Yunqué y Negrón García.

San Juan, Puerto Rico, a 7 de noviembre de 1975

Al concurrir íntegramente con la opinión circulada deseo añadir lo siguiente:

El concepto de "detención y arresto" a los fines limitados de pedir al conductor que se someta a análisis químico de sangre o aliento (9 L.P.R.A. sec. 1043(b)) sin mayor privación de libertad cuando éste accede, no representa el acto de poner la persona bajo custodia restrictiva que la Regla 22(a) de Procedimiento Criminal rehusó dejar al arbitrio del policía, requiriendo su pronta revisión por un magistrado.

Cuando la detención es efímera y así circunscrita, y consentida por el ciudadano que se aviene al análisis, no veo dificultad semántica ni jurídica en aplicar la Regla 7(a) de Procedimiento Criminal en su provisión de que ". . . En aquellos casos en que un funcionario del orden público pudiere arrestar sin orden de un magistrado, dicho agente, si se tratare de un delito menos grave (*misdemeanor*), podrá citar por escrito y bajo su firma a la persona para que comparezca ante un magistrado, en vez de arrestarla. La citación informará a la persona que si no compareciere se expedirá una orden de arresto en su contra." (Énfasis en el original.)

Las Reglas de Procedimiento Criminal sobre arresto están dirigidas a proteger la libertad, y es absurda y suicida la posición del interventor insistiendo en que se le proteja su libertad prolongando su custodia por el tiempo problemático e incierto en ocasiones que tome encontrar un magistrado disponible, en sustitución del método racional utilizado por el policía dejándolo libre con una citación de cuatro días de plazo para comparecer ante el juez.